Burgie vs. Davis.

## BURGIE VS. DAVIS.

1. LANDLORD AND TENANT: *Laborer not a tenant. Sub-laborer: Lien on crop.*
   One who raises a crop upon land of another under a contract to raise the crop for a particular part of it, is a mere cropper, and not a tenant; and has a lien upon the crop for whatever is due him: And, as against him, a laborer under him has a lien upon the crop only to the extent of the cropper's claim against the land owner, and may enforce it against the land owner who gets the crop.

APPEAL from *Chicot* Circuit Court.
Hon. T. F. SORRELLS, Circuit Judge.
*Reynolds*, for appellant.
*Rice & Bishop, contra.*

EAKIN, J. By an instrument bearing date the first of January, 1875, Paralee Davis contracted, in writing, with

Philip Armistead to work for him during the year, "to help him make a crop of corn and cotton on the plantation of Samuel Burgie." He, on his part, agreed to pay her, as wages, three bales of cotton of 400 pounds each, which he was to ship, when ready for market, collect the proceeds and pay over to her.

In February, 1876, she sued Armistead and appellant before a justice, in a written complaint; wherein she set up the contract, and that she had performed her part; and that the results of the labor, in which she had assisted, had been eight bales of cotton, weighing, in the aggregate, 3,286 pounds; that a half of it had been turned over to appellant Burgie for rent; that there were still three bales left belonging to said Armistead, which Burgie had taken under a pretended purchase, and was about to remove. She claimed a laborer's lien upon those bales, and obtained an attachment, by which the cotton was seized.

Armistead made no defense, being, as appears from the evidence, in sympathy with the plaintiff. Burgie answered, stating that Armistead had agreed with him to work a part of his land for 1875, for a half of the corn and cotton raised, less the amount of supplies which might be furnished to him, by Burgie, during the year; and that *the balance* of said half, after paying the supplies, was to be turned over to Armistead at the gin-house. The other half was to be retained by Burgie for the use of his land, teams and farming implements; that he was advised by Armistead and Paralee that she was working with him on the same terms as an assistant, and that he had, himself, no contract nor understanding with Paralee. She and Armistead lived together in the same cabin, and together consumed the supplies which appellant furnished, which supplies, after deducting all credits, amounted in value to

$202.92. Further, that the half of the crop (1,643 pounds) had been applied in part payment of these supplies, and the remainder, which had been attached, belonged to him for the use of his lands, etc.

He denies that any of the cotton had been turned over to him for rent, or that any one had authority thus to turn it over, but claims the right to all of it until he may be paid for supplies. He says that the whole crop made, will not pay for the use of the land, teams and supplies furnished, and that Armistead never had any interest in it, except for the balance, as aforesaid. He denies, further, that the plaintiff has any lien as against him.

Judgment was rendered, before the justice, in favor of defendant Burgie, and Paralee appealed to the circuit court, where the cause was tried *de novo*, on the same pleadings. There was a verdict, in favor of plaintiff, for $96, motion for a new trial overruled, judgment, and appeal to this court by defendant Burgie, with bill of exceptions.

Armistead, testifying for the plaintiff, said, that he had contracted to "work some ground" on Burgie's plantation, in 1875, on halves, Burgie furnishing land, teams and utensils. That Burgie was to furnish him, and nothing was said about who should pay for supplies; others, working on the same place for a half, paid for their supplies out of their half of the crop. Witness employed Paralee to work for him under his contract. Burgie took the whole crop, one-half for himself, and the other half to pay for supplies furnished witness. The contract between Paralee and Armistead was then introduced, and proof made that she had rendered the services, and had not been paid, and that cotton was worth from 8 to 10 cents per pound.

Burgie testified, for himself, the same matter set up in his answer, with regard to the nature of his contract with

Armistead, especially that he was to be paid for supplies furnished Armistead, out of his half of the cotton, and pay him over the balance only. He proved the indebtedness of Armistead, and that his half of the crop was insufficient to pay it.

It was further proved, on the part of defendant, that the contract between Paralee and Armistead was not really made until some time in March or April, and ante-dated.

It is apparent, from the pleadings and evidence, that the relation of landlord and tenant did not exist between Burgie and Armistead. The latter was merely what is called a cropper, to be paid for his labor out of the proceeds of the crop. This is equally true, whether he was to be paid half the proceeds in gross, or only the balance after deducting from his half advances for supplies. He was in no sense a tenant. His contract for labor was a personal one, to be paid for by either the gross half, or the balance of the half, as aforesaid, as the jury might determine the contract to have been. (*Christian v. Crocke et al.*, *25 Ark.*, *327; Ponder v. Rhea*, *32 ib.*, *435*.) Under the laborer's lien act he had a lien upon the crop raised, for whatever his claim might be, and as against him Paralee had a lien for the proceeds of 1,200 pounds, but only to the extent of his claim against Burgie. If he had nothing coming from his employer, there was nothing upon which any lien in favor of Paralee could attach, inasmuch as she was not a laborer for Burgie, nor connected with him by any privity of contract. She had no right to take his property to satisfy a contract made with Armistead for the latter's benefit.

The instructions of the court to the jury were based upon the supposition that the relation of landlord and tenant existed between Burgie and Armistead, and that

Burgie vs. Davis.

the lien of the former extended only to the half of the crop due for rent, and that as to the other half the lien of Paralee was superior. The evidence would not have authorized the jury in finding a tenancy, and the law governing landlord's liens has no application to the case. The instructions should have been in accordance with the principles above indicated, and it should have been left to the jury to determine the amount, if any, due Armistead under the contract; deducting from the half of the crop the amounts of supplies furnished, if they should find such to have been the contract—or allowing the whole half, to the extent of plaintiff's claim, if they should find no contract for making such deduction to have been made, or impliedly understood by the parties. The plaintiff, by virtue of her lien against Armistead for labor, may enforce against Burgie, who got the cotton, just such lien as Armistead had for his labor, and no more. She stands in Armistead's shoes, claiming under and through him. If, indeed, Armistead contracted to make a crop for one-half, less supplies furnished, it would be grossly inequitable to allow him to take up the half in supplies, and, by employing another to do the work he contracted to do, give that other a lien as against the landlord upon the very crop for which the landlord had paid. No such construction can be put upon the statutes.

For error in instructions, the nature of which has been sufficiently pointed out, let the judgment be reversed, and the cause remanded for a new trial.