CAMPBELL v. ANDERSON.

4-3533

Opinion delivered October 1, 1934.

672

*Owens & Ehrman* and *Herschell Bricker*, for appellants.

Butler, J. This action was begun by Anderson and certain other persons to enforce a laborers' lien upon crops grown by J. L. Kestle on lands owned by the Winooski Savings Bank. At the conclusion of the testimony a judgment was directed for the plaintiffs over the objection of the defendants, which action of the court is assigned as error.

The lease agreement under which Kestle operated was executed on March 29, 1930, between A. W. Campbell, agent, as lessor, and J. L. Kestle, as lessee. By this agreement the lessor leased for the crop year of 1930 certain lands in Arkansas County for the purpose of the lessee raising a crop of rice thereon. The lessee agreed to prepare the soil for planting, to plant, irrigate and harvest the crop, furnish all necessary work for said purposes, and for the threshing of the crop and hauling the same to market. He was also to furnish all necessary implements and to pay all other expenses incident to making the crop, including binder, twine, etc. The lease further stipulated that, "in consideration of lessor's leasing said lands to the lessee, lessee agrees to deliver for the account of the lessor one-half of the rice grown on said lands to the cars or mill at Almyra, DeWitt, or Stuttgart, at the option of the lessor." The lessor agreed to furnish the seed rice, electric power for the irrigation plant, to make necessary repairs thereon, to keep said plant in good working order during the year, and was to furnish lessee a "reasonable" amount of money with which to make the 1930 crop.

There is practically no conflict in the evidence. It was proved that the plaintiffs performed the work for Kestle in thrashing the rice, and that he was due them the amounts claimed, payment for which had not been made. It was admitted by them that they had no dealings

with the Winooski Savings Bank or with its agent, Campbell. It is also undisputed that the appellants furnished reasonably sufficient money with which to make and gather the crop, and that, after the proceeds derived from Kestle's half of the crop has been credited to his account, there remains a considerable balance still due.

The contract, the substance of which has been set out, establishes the relation between the Winooski Savings Bank and Kestle of landlord and tenant under the rule announced in *Hammock* v. *Creekmore,* 48 Ark. 264, 3 S. W. 180, followed and restated in *Barnhardt* v. *State,* 169 Ark. 567, 275 S. W. 909. From the terms of the contract, it is apparent that Kestle was not to receive a part of the crop from the landlord as wages for his work, but that he had dominion over the lands and controlled the processes of agriculture unhampered by interference on the part of the landlord, and was to pay one-half of the crop grown for the seed, use of the land and irrigation equipment, using his own farm equipment and furnishing the labor.

"If the share-cropper raises a crop for the landlord, and is to receive a part of the crop from the landlord as wages for his work, the title to the crop grown vests in the landlord, and the share-cropper has a lien thereon for his labor. If the share-cropper is to pay one-half the crop for the use of the land, with the tools and team and feed therefor, then the title to the crop is in the tenant, and the landlord has a lien thereon, and, in addition, the landlord has a lien for any necessary supplies of money or provisions to enable the tenant to make the crop, but the title to the crop is in the tenant." *Barnhardt* v. *State, supra.*

The statutes give a landlord a lien on crops raised by his tenant or employee for the rent of the land and for advances of money, or other supplies necessary to enable the tenant or employee to make and gather the crop. Section 6864, Crawford & Moses' Digest, which is § 1 of act No. 35 of the Acts of 1895, gives laborers an absolute lien on the thing, material, or property upon which they have performed work for the amounts due for such work, subject to the landlord's liens for rent and sup-

plies. The respective rights and conflicting claims of landlords for rent and advances made and those who perform work for a tenant or share-cropper in making or gathering a crop is discussed in *Burgie* v. *Davis,* 34 Ark. 179. In that case it appears that one Armistead was a laborer on the farm of Burgie. He was to make and gather the crop furnishing only his labor, food and clothing, and was to receive one-half the crop as his wage. Burgie was to, and did, furnish the supplies necessary to make the crop for which Armistead was to pay out of his half. The latter made a contract with others to work for him for which work he was to pay out of his half of the crop a certain part thereof. Burgie took possession of the crop when gathered, and Armistead's laborers brought suit to recover the value of the cotton agreed to be paid to them by Armistead as wages. It was held that they had a lien upon Armistead's half of the crop, but that it was subordinate to that of the owner for supplies furnished.

In *Cotton* v. *Chandler,* 150 Ark. 368, 234 S. W. 165, it was held, quoting headnote that: "Where a landowner employed a share-cropper to raise a crop on land, and made advances to him to be repaid out of his share of the crop, the landowner's right to a lien for such advances is superior to the rights of third persons who assisted the sharecropper in making the crop under an agreement with the latter that they should receive one-third of the latter's crop."

From the undisputed evidence in this case, with the statutes and decisions cited *supra* applied thereto, it is evident that the trial court erred in any view of the case in directing a verdict for the plaintiffs, but should have directed a verdict in favor of the defendant as requested by it. The judgment is therefore reversed, and the case is dismissed.